UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNARD CARRAFA,

       Petitioner,

v.                                                      Case No. 3:21-cv-139-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

**ORDER**

**I.**   **Status**

Petitioner Bernard Carrafa, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. See Doc. 1. Petitioner challenges three state court (Duval County, Florida) negotiated pleas of guilty and resulting judgments of conviction for three counts of burglary of a dwelling. Petitioner is serving three concurrent fifteen-year terms of incarceration as a Prison Releasee Reoffender. Respondents responded. See Doc. 6 (Resp.).[1] Petitioner replied. See Doc. 13.

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

This case is ripe for review.[2]

## II. Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

> quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

4

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of

5

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

6

### III.     Factual and Procedural History

On October 10, 2017, officers went to Petitioner's residence to serve an outstanding warrant for violating his probation and because Petitioner was a known suspect in a recent burglary. Resp. Ex. A at 2. When officers arrived, another individual named Jarvis advised she owned the home and gave officers consent to search, during which they found among Petitioner's belongings property stolen during the October 2, 2017, burglary of David De Berry's home and the October 7, 2017, burglary of Terrie Boatwright's home. Id.; Resp. Ex. K at 2. Officers then arrested Petitioner for the two burglaries.[3] Resp. Ex. A at 1-2; Resp. Ex. K at 1-2. During their search, other residents of the house also advised officers that Petitioner had recently brought home several items, even bringing home items earlier that day, and identified over 250 objects that officers collected and placed in the sheriff's office property room. Resp. Ex. F at 2.

On the day Petitioner was arrested, October 10, 2017, Gregory Thomas reported that his home had been burglarized. Id. at 2. On October 20, 2017, Officer Angresano was investigating burglaries that coincided with the timeframes that Petitioner's housemates reported Petitioner brought items home; and while examining the items collected during Petitioner's arrest,

---

[3] Officers also arrested Petitioner for the VOP offense. Resp. Ex. K at 2.

7


Officer Angresano identified three items stolen from Thomas's home. Id. Officer Angresano then located Petitioner at the Duval County Jail and when he tried to transport Petitioner to the burglary office to be interviewed, Petitioner invoked his right to remain silent and refused to speak about any suspected burglary. Id. Petitioner was then arrested for the October 10, 2017, burglary of Thomas's home. Id.

A few weeks later, the state charged Petitioner with the October 2, 2017, burglary of DeBerry's home in No. 2017-CF-9238, Resp. Ex. K at 12; the October 7, 2017, burglary of Boatwright's home in No. 2017-CF-9296, Resp. Ex. A at 12; and the October 10, 2017, burglary of Thomas's home in No. 2017-CF-9659, Resp. Ex. F at 12. The trial court appointed the office of the public defender to represent Petitioner, and the state soon filed a notice of intent to classify Petitioner as a Prison Releasee Reoffender in all three cases. Resp. Ex. A at 15, 141. In January 2018, the office of the public defender withdrew as counsel and Theodore Zentner and William Durden, III, filed a notice of appearance on behalf of Petitioner. Resp. Ex. A at 20. Three months later, Zentner and Durden moved to withdraw asserting irreconcilable differences. Id. at 29. The trial court granted their motion and reappointed the public defender's office to represent Petitioner in all cases. Id. at 32.

Following the public defender's office reappointment, the trial court conducted a pretrial status conference on April 11, 2018, during which trial counsel advised the trial court that he had conferred with the state, reviewed everything for the three burglary cases, and was preparing to depose the "Category A" witnesses for No. 2017-CF-9238 but otherwise he did not anticipate doing anything further before setting the cases for trial. Resp. Ex. A at 92-94. As trial counsel and the trial court discussed these matters, the transcript indicates Petitioner was "raising his hand" to address the trial court. Id. Once the trial court finished discussing scheduling issues, it asked Petitioner if he wished to say something, to which he responded that he wished to have a Nelson[4] hearing "because there was a breach of confidentiality with [him] and" his attorney. Id. at 94. The trial court then conducted an inquiry about Petitioner's concerns, during which Petitioner advised that on the day the public defender's office was reappointed, his trial attorney discussed with him his potential status as a PRR and a Habitual Felony Offender, and during the pretrial hearing right after their discussion, the state filed a notice of intent to classify Petitioner as an HFO.[5] Id. at 98. Petitioner suggested trial counsel

---

[4] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

[5] The state did not file a notice of intent to seek an HFO sentence in any of the three cases Petitioner challenges here, and thus the Court assumes the state filed the alleged notice in an unrelated case pending at that time.

9

encouraged the state to file the HFO notice, or disclosed information discussed during their private conversation. Id. at 98. In response, trial counsel stated that after his appointment, he discussed with Petitioner his extensive criminal record and potential sentencing enhancements he could face; but trial counsel clarified that it was merely a coincidence that the state filed an HFO notice the same day they had that discussion and he neither encouraged nor influenced the state's decision to file the HFO notice. Id. at 100.

After considering trial counsel's statements, the trial court found counsel was not ineffective and denied Petitioner's request to appoint another attorney. Id. at 101. The trial court explained that Petitioner's criminal record is "not a secret" and any good attorney would know those details and discuss them with his client, including potential sentencing enhancements, and it is common for trial counsel to also discuss those issues with the state during potential plea negotiations. Id. at 102. Petitioner confirmed he understood the trial court's explanation and ruling and advised he was "just ready to get this taken care of." Id. at 104.

About two months later, Petitioner hired private counsel Otto Rafuse and the public defender's office withdrew. Id. at 38. Trial counsel soon moved to strike the state's notice to classify Petitioner as a PRR. Id. at 39. The trial court held a hearing on the motion on August 23, 2018. Resp. Ex. A at 118. During

the hearing, trial counsel argued that Petitioner could not be classified as a PRR on the burglary of a dwelling charges because the offenses were not forcible felonies. Id. at 119. According to trial counsel, Petitioner had conducted the legal research supporting that argument and trial counsel advised he believed Petitioner had "a good argument." Id. at 118. The trial court ultimately denied Petitioner's motion and following the trial court's ruling, trial counsel advised he was meeting with Petitioner the next day and explained that while the cases were set for trial, the parties "might possibly have a resolution"; thus, counsel asked the trial court to set a status conference before the final pretrial hearing. Id. at 133.

A week later, on August 30, 2018, Petitioner entered a negotiated plea of guilty to the burglary of a dwelling offense charged in each of the three cases and reserved his right to appeal his classification as a PRR.[6] Resp. Ex. A at 48, 138-39. That same day, in accordance with his negotiated disposition, the trial court, in all three burglary cases, adjudicated Petitioner as a PRR and sentenced him to a fifteen-year term of incarceration, with each sentence to run concurrently. Resp. Ex. A at 50-56; Resp. Ex. F at 42-48; Resp. Ex. K at 48-54.

In his three direct appeals, Petitioner, with the benefit of counsel, filed an initial brief under Anders v. California, 386 U.S. 738 (1967), representing

---

[6] That same day, Petitioner also entered a plea of guilty to the violation of probation charged in an unrelated case. Resp. Ex. A at 138.

that no good faith argument of reversible error could be made. Resp. Exs. B, G, L. The First District Court of Appeal granted Petitioner leave to file a pro se initial brief. Resp. Exs. C, H, M. Petitioner then filed a pro se initial brief arguing that the trial court erred in imposing a PRR sentence and that section 775.082, Florida Statutes, is vague and ambiguous. Resp. Exs. D, I, N. The First DCA per curiam affirmed all three judgments and convictions without written opinions. Resp. Exs. E, J, O. After seeking postconviction relief with the state court, Petitioner filed the Petition.

## IV.  The Petition

Petitioner raises one ground for relief. He argues his trial counsel was ineffective for failing to investigate and present a defense that Petitioner was insane at the time of the offenses. Doc. 1 at 6. According to Petitioner, before the burglaries, Petitioner was in the Florida Department of Corrections' custody serving a sentence for an unrelated offense at Phoenix House. Id. at 6-7. He contends that during his time at Phoenix House, officials administered a monthly medication that balanced Petitioner's emotions and let him think rationally about his decisions. Id. at 6-7. Petitioner asserts he stopped receiving the medication after his June 2017 release and soon began suffering from depression, memory loss, irrational behavior, and anxiety. Id. at 7. He maintains he was suffering from these illnesses at the time of the offenses and

advised his trial counsel of these facts, but trial counsel did not investigate Petitioner's mental state or pursue an insanity defense. Id. at 8-9. Petitioner argues that if his trial counsel had investigated an insanity defense, he would not have entered a guilty plea and would have insisted on going to trial. Id. at 10.

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion filed in state court. Resp. Ex. P at 6. The trial court summarily denied the claim, finding:

> In Ground One, Defendant alleges counsel was ineffective for not pursuing an insanity defense. However, accepting Defendant's factual allegations as true, insanity would not have been a viable defense at trial. See Crockham v. State, 723 So. 2d 355, 356 (Fla. 4th DCA 1998). Further, when he entered his plea, Defendant knew he would be waiving his right to present evidence. Accordingly, Defendant is not entitled to relief on Ground One.

Resp. Ex. P at 65 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. See Carrafa v. State, No. 1D20-1061 (Fla. 1st DCA Oct. 21, 2020).[7]

The Court addresses the claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court finds that Petitioner fails to demonstrate "a reasonable probability that, but for counsel's

---

[7] Respondents filed a copy of the First DCA's mandate for Petitioner's Rule 3.850 appeal but did not provide a copy of the First DCA opinion.

errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Indeed, after a thorough review, the Court finds no evidence in the state court record or otherwise that Petitioner was insane at the time of the offenses such that an insanity defense would have been viable at trial. Rather, the record shows Petitioner invoked his right to remain silent when officers tried to interview him about the Thomas burglary; he actively participated in defending each of his cases; conducted his own legal research about his sentencing enhancement; and hired several attorneys throughout the process. During pretrial hearings, Petitioner addressed the trial court in a coherent manner and never mentioned a desire to pursue an insanity defense; and on at least one occasion, he expressed to the trial court that he was "just ready to get this taken care of." Resp. Ex. A at 104.

Also, Petitioner's solemn declarations during his plea colloquy carry a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that a defendant who makes statements under oath at a plea colloquy bears a heavy burden to show his statements were false). And Petitioner's representations at the plea hearings "constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74; see also Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (recognizing that the record of the plea

14

proceedings may contradict any subsequent claim that counsel's representation was deficient). Notably, during his plea hearing, he testified that he understood that if he were found guilty at trial, the trial court could impose consecutive fifteen-year PRR sentences for the three burglary cases, for a total forty-five-year term of incarceration. Resp. Ex. A at 143. But by entering his negotiated pleas, Petitioner knew he would receive concurrent fifteen-year PRR sentences. Id. at 145-46. Trial counsel and Petitioner also made the strategic decision to reserve Petitioner's right to appeal the PRR designations and he filed a pro se brief on direct appeal doing so. But the First DCA found his argument lacked merit.

During Petitioner's plea colloquy, the state also presented a factual basis for each burglary charge and Petitioner acknowledged, under oath, that he accepted the stated facts supporting the three charges. Resp. Ex. A at 154-55. Petitioner testified that he was entering his negotiated pleas of guilty because he was, in fact, guilty of committing the offenses, thus waiving any potential defense for which he discussed with counsel before he entered those guilty pleas. Id. at 147-48; see Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to

15

the entry of the guilty plea."). Petitioner acknowledged that he was waiving his right to require the state to prove his guilt beyond a reasonable doubt. Resp. Ex. A at 148-49. And based on Petitioner's representations, the trial court accepted the factual basis for the pleas and found that Petitioner freely and voluntarily entered his pleas with an understanding of the consequences thereto. Id. at 162-63.

Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. This claim is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of January, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:  Bernard Carrafa, #296996
    Counsel of record

---

[8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.